**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| JAMIE HUNSTAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:19-cv-1155 |
| | ) | |
| TARGET CORPORATION, | ) | |
| a/k/a TARGET STORES, INC., | ) | |
| a foreign corporation d/b/a TARGET | ) | |
| | ) | |
| Serve:  CT Corporation System (Registered Agent) | ) | |
| 4701 Cox Rd. Ste. 285 | ) | |
| Glen Allen, Virginia  23060-6808 | ) | |
| | ) | |
| KEHE DISTRIBUTORS, LLC; | ) | |
| | ) | |
| KEHE DISTRIBUTORS, INC., | ) | |
| | ) | |
| KEHE ENTERPRISES, LLC; | ) | |
| | ) | |
| WORLD FINER FOODS, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WORLD FINER FOODS, LLC, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

The plaintiff, JAMIE HUNSTAD, by and through her attorneys, for her Complaint against the defendants, TARGET CORPORATION a/k/a TARGET STORES, INC., KEHE DISTRIBUTORS, LLC, KEHE DISTRIBUTORS, INC., KEHE ENTERPRISES, LLC, WORLD FINER FOODS, INC., and WORLD FINER FOODS, LLC, states as follows:

## NATURE OF ACTION

1.      This is an action against Target Corporation a/k/a Target Stores, Inc., KeHE

Distributors, LLC, KeHE Distributors, Inc., KeHE Enterprises, LLC, World Finer Foods, Inc.,

and World Finer Foods, LLC, for injuries arising from the manufacture, distribution and sale of

contaminated I.M. Healthy Original Creamy SoyNut Butter, which was consumed by the plaintiff

Jamie Hunstad when she was a minor child.

## PARTIES

2.      Plaintiff Jamie Hunstad is a resident of the Commonwealth of Virginia.

3.      Defendant Target Corporation a/k/a Target Stores, Inc. ("Target") is a Minnesota

corporation with its principal place of business located at 1000 Nicollet Mall, Minneapolis,

Minnesota 55403.  Target is, therefore, a citizen of the State of Minnesota.

4.      At all times relevant to this action, Target was engaged in the distribution and sale

of a variety of products to customers across the country, including soy nut butter manufactured

by Dixie Dew Products, Inc. and The SoyNut Butter Company.

5.      At all times relevant to this action, Target owned, operated and managed a store

located at 10301 New Guinea Road, Fairfax, Virginia 22032 (the "Target Store.")

6.      At all times relevant to this action, Defendant KeHE Distributors, LLC was a

limited liability company formed under the laws of the State of Delaware, but with its principal

place of business in Naperville, Illinois.

7.      Upon information and belief, the only member of Defendant KeHE Distributors,

LLC is Brandon Barnholt, who has resided and been domiciled in Naperville, Illinois since 2007.

Accordingly, KeHE Distributors, LLC and all of its members (there being only one) are citizens

of the State of Illinois.

8.     Upon information and belief, KeHE Distributors, LLC does business in the Commonwealth of Virginia based on its continuous and systematic affiliations there and purposely avails itself of Virginia law.

9.     At all times relevant to this action, Defendant KeHE Distributors, Inc. was a Delaware corporation with its principal place of business in Naperville, Illinois.  Therefore, KeHE Distributors, Inc. is a citizen of the States of Delaware and Illinois.

10.     Upon information and belief, KeHE Distributors, Inc. does business in the Commonwealth of Virginia based on continuous and systematic affiliations there and purposely avails itself of the protections and benefits of Virginia law.

11.     At all times relevant to this action, Defendant KeHE Enterprises, LLC was a Delaware limited liability company with its principal place of business in Naperville, Illinois.

12.     Upon information and belief, the only member of KeHE Enterprises, LLC is Brandon Barnholt, who has resided and been domiciled in Naperville, Illinois since 2007. Accordingly, KeHE Enterprises, LLC and all of its members (there being only one) are citizens of the State of Illinois.

13.     Upon information and belief, KeHE Enterprises, LLC does business throughout the United States including the Commonwealth of Virginia by and through its related and/or alter-ego companies, including KeHE Distributors, Inc. and KeHE Distributors, LLC.

14.     At all relevant times, Defendant KeHE Distributors, LLC, KeHE Distributors, Inc., and/or KeHE Enterprises, LLC (hereinafter collectively and individually referred to as "KeHE") distributed and supplied I.M. Healthy SoyNut Butter to Target, including to the Target

3

Store located in Fairfax, Virginia.

15.     Defendant World Finer Foods, Inc., is a Delaware corporation with its principal place of business located in Bloomfield, New Jersey.  Defendant World Finer Foods, Inc. is therefore a citizen of Delaware and New Jersey.

16.     Upon information and belief, World Finer Foods, Inc. does business throughout the United States including the Commonwealth of Virginia given that the subject product it sold and distributed was sold and distributed there.

17.     At all times relevant to this action, Defendant World Finer Foods, LLC is and was a Delaware limited liability company with its principal place of business in Bloomfield, New Jersey.

18.     Upon information and belief, at all times relevant to this action, Defendant World Finer Foods, LLC's members are KeHE, United Natural Foods, Inc., and Arlowe Specialty Foods Co.  Upon information and belief, KeHE's sole member is Brandon Barnholt, who has been domiciled, since 2007, in Naperville, Illinois.  United Natural Foods, Inc. is a Delaware corporation with its principal place of business in Providence, Rhode Island.  Arlowe Specialty Foods Co. is a Delaware corporation with its principal place of business in Dayton, Ohio. Accordingly, World Finer Foods, LLC is a citizen of the States of Delaware, Illinois, Rhode Island, and Ohio.

19.     Upon information and belief, Defendant World Finer Foods, LLC does business throughout the United States including within the Commonwealth of Virginia given that the subject product it sold and distributed was sold and distributed there.

20.     At all relevant times, Defendants World Finer Foods, Inc. and World Finer Foods, LLC (hereinafter collectively and individually referred to as "Word Finer Foods") distributed and supplied I.M. Healthy SoyNut Butter to KeHE, who, as alleged in this Complaint, distributed and supplied I.M. Health SoyNut Butter to Target, including to the Target Store located in Fairfax, Virginia.

## JURISDICTION AND VENUE

21.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1332(a), since the matter in controversy exceeds, exclusive of interests and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00) and there is diversity of citizenship between Plaintiff and Defendants.

22.     Venue is proper in this judicial district as the facts giving rise to Plaintiff's Complaint arose in this judicial district.

23.     Venue in the Eastern District of Virginia is proper pursuant to 28 USC § 1391(a)(1) and (2) because the Defendants are subject to personal jurisdiction in this judicial district.

## FACTS

24.      Plaintiff repeats and realleges the previous allegations as if set forth herein.

### The Outbreak

25.     In March 2017, the Food and Drug Administration (FDA) and the Centers for Disease Control and Prevention (CDC), along with state and local health officials, attributed a multi-state outbreak of Shiga toxin-producing Escherichia coli O157:H7 to I.M. Healthy brand SoyNut Butter.

26.     Epidemiologic investigation by federal, state, and local public health officials, including Centers for Disease Control and Prevention (CDC) and Food and Drug Administration (FDA), found that at least 32 people had acquired E. coli O157:H7 infections by consuming contaminated I.M. Healthy SoyNut Butter.  This included residents of Arizona (4), California (5), Florida (2), Illinois (1), Massachusetts (1), Maryland (1), Missouri (1), New Jersey (1), Oregon (11), Virginia (2), Washington (2), and Wisconsin (1).  Twelve individuals were hospitalized due to their infection, and nine developed hemolytic uremic syndrome (HUS).

27.     The I.M. Healthy brand of soy nut butter products identified as the contaminated food item in this outbreak were produced jointly by The SoyNut Butter Company and Dixie Dew Products, Inc., at a facility owned by Dixie Dew in Kentucky.  On March 28, 2017, once epidemiologic investigation described previously had identified I.M. Healthy brand soy nut butter products as the source of the outbreak, the Food and Drug Administration (FDA) conducted a comprehensive investigation at the Dixie Dew facility.  Among other things, the FDA found:

    a.     grossly unsanitary conditions;

    b.     food contact surfaces, floors, walls, and ceilings in the soy nut butter processing and packaging rooms were heavily coated with soy nut butter build-up from previous production runs;

    c.     that Dixie Dew does not routinely wash and sanitize smaller pipes, pipe fittings, gaskets, seals, "or the rubber _____ plug" [sic] when broken down following a production run;

    d.     that Dixie Dew does not conduct a kill step for SoyNut Butter product remaining in its mixing kettle leftover from a production run;

    e.     that certain equipment in the facility routinely shuts off during processing—approximately one to two times per day—and that the problem has persisted for approximately 15 years despite repeated maintenance intended to correct the problem;

f.      that a thermometer used during the production of the subject product has never been verified for accuracy;

g.      that a temperature probe and chart recorder used during the production process for the subject product does not function properly and has not been used for well over a year;

h.      that Dixie Dew's food safety testing program is problematic—among other things, due to the failure to perform microbial testing where necessary to identify possible food contamination;

i.      that FDA inspectors found that testing materials on hand at Dixie Dew had expired in July 2016 and October 2015; and

j.      that Dixie Dew had a fly infestation problem, and that small apparent flies and fly larvae, too numerous to count, were inside an unplugged chest freezer.

28.      On March 3, 2017, as a result of epidemiologic and environmental evidence indicating that its soy nut butter products were the source of the outbreak, The SoyNut Butter Company recalled I.M. Healthy Original Creamy SoyNut Butter with "best by" dates August 30 and August 31, 2018.  This recall also included individual portion cups of the same product with best by dates in August and November 2018.

29.      On March 7, 2017, The SoyNut Butter Company expanded its recall to include all varieties of I.M. Healthy soy nut butters and all varieties of I.M. Healthy granola products, regardless of production or best by date.

30.      Plaintiff was one of multiple individuals to make a claim for personal injuries against The SoyNut Butter Company and Dixie Dew as a result of this outbreak.  Both companies filed for Chapter 7 bankruptcy, and the assets of these companies available to satisfy personal injury claims arising from this outbreak, including Plaintiff's, were insufficient to fairly

compensate the claimants.

31.     At all times relevant to this action, Defendants KeHE Distributors, LLC, KeHE

Distributors, Inc., and KeHE Enterprises, LLC were all alter egos of one another and are referred

to collectively as "KeHE" in this complaint.  These entities jointly or independently distributed

I.M. Healthy SoyNut Butter.

32.     Upon information and belief, Brandon Barnholt is a primary member and officer

of all of these entities.  There exists a unity of interest and ownership between Defendants KeHE

Distributors, LLC, KeHE Distributors, Inc., and KeHE Enterprises, LLC, the exact relationship

of which is not fully known by Plaintiff, and all are liable in this action.

33.     At all times relevant to this action, Defendants World Finer Foods, Inc. and World

Finer Foods, LLC were alter egos of one another and are referred to collectively as "World Finer"

in this complaint.  These entities jointly or independently distributed I.M. Healthy SoyNut Butter.

34.     Upon information and belief, Brandon Barnholt is a primary member and officer

of all of these entities.  There exists a unity of interest and ownership between Defendants World

Finer Foods, Inc. and World Finer Foods, LLC, the exact relationship of which is not fully

known by Plaintiff, and both are liable in this action.

35.     Defendants KeHE and World Finer are distributors of various food products to

retail stores and foodservice locations nationally.  Defendants KeHE and World Finer each

acquired and distributed recalled soy nut butter products, including to Target and other retail

stores nationally.

36.     With regard to the contaminated jar of I.M. Healthy SoyNut Butter that Plaintiff's

mother purchased at Target, as described below, World Finer Foods acquired this product from

The SoyNut Butter Company and distributed it to KeHE.   KeHE then distributed the product to the Target store location where Plaintiff's mother purchased it.

### E. coli O157:H7

37.   E. coli is an archetypal commensal bacterial species that lives in mammalian intestines.  E. coli O157:H7 is one of thousands of serotypes Escherichia coli.  The combination of letters and numbers in the name of the E. coli O157:H7 refers to the specific antigens (proteins which provoke an antibody response) found on the body and tail or flagellum respectively and distinguish it from other types of E. coli.  Most serotypes of E. coli are harmless and live as normal flora in the intestines of healthy humans and animals.  The E. coli bacterium is among the most extensively studied microorganism.  The testing done to distinguish E. coli O157:H7 from its other E. coli counterparts is called serotyping.  Pulsed-field gel electrophoresis (PFGE), sometimes also referred to as genetic fingerprinting, is used to compare E. coli O157:H7 isolates to determine if the strains are distinguishable.  A technique called multilocus variable number of tandem repeats analysis (MLVA) is used to determine precise classification when it is difficult to differentiate between isolates with indistinguishable or very similar PFGE patterns.

38.   E. coli O157:H7 was first recognized as a pathogen in 1982 during an investigation into an outbreak of hemorrhagic colitis associated with consumption of hamburgers from a fast food chain restaurant.  Retrospective examination of more than three thousand E. coli cultures obtained between 1973 and 1982 found only one (1) isolation with serotype O157:H7, and that was a case in 1975.  In the ten (10) years that followed there were approximately thirty (30) outbreaks recorded in the United States.  This number is likely misleading, however, because E. coli O157:H7 infections did not become a reportable disease in any state until 1987

when Washington became the first state to mandate its reporting to public health authorities.  As a result, only the most geographically concentrated outbreak would have garnered enough notice to prompt further investigation.

39.     E. coli O157:H7's ability to induce injury in humans is a result of its ability to produce numerous virulence factors, most notably Shiga-like toxins.  Shiga toxin (Stx) has multiple variants (e.g. Stx1, Stx2, Stx2c), and acts like the plant toxin ricin by inhibiting protein synthesis in endothelial and other cells.  Shiga toxin is one of the most potent toxins known.  In addition to Shiga toxins, E. coli O157:H7 produces numerous other putative virulence factors including proteins, which aid in the attachment and colonization of the bacteria in the intestinal wall and which can lyse red blood cells and liberate iron to help support E. coli metabolism.

40.     E. coli O157:H7 evolved from enteropathogenic E. coli serotype O55:H7, a cause of non-bloody diarrhea, through the sequential acquisition of phage-encoded Stx2, a large virulence plasmid, and additional chromosomal mutations.  The rate of genetic mutation of E. coli O157:H7 indicates that the common ancestor of current E. coli O157:H7 clades likely existed some 20,000 years ago.  E. coli O157:H7 is a relentlessly evolving organism, constantly mutating and acquiring new characteristics, including virulence factors that make the emergence of more dangerous variants a constant threat.  The CDC has emphasized the prospect of emerging pathogens as a significant public health threat for some time.

41.     Although foods of a bovine origin are the most common cause of both outbreaks and sporadic cases of E. coli O157:H7 infections, outbreak of illnesses have been linked to a wide variety of food items.  For example, produce has, since at least 1991, been the source of substantial numbers of outbreak-related E. coli O157:H7 infections.  Other vehicles for E. coli

O157:H7 outbreaks have included unpasteurized juices, yogurt, dried salami, mayonnaise, raw milk, game meats, sprouts, and raw cookie dough.

42.     According to a recent study, an estimated 93,094 illnesses are due to domestically acquired E. coli O157:H7 each year in the United States.  Estimates of foodborne acquired O157:H7 cases result in 2,138 hospitalizations and 20 deaths annually.  The colitis caused by E. coli O157:H7 is characterized by severe abdominal cramps, diarrhea that typically turns bloody within twenty-four (24) hours, and sometimes fevers.  The incubation period—which is to say the time from exposure to the onset of symptoms—in outbreaks is usually reported as three (3) to four (4) days but may be as short as one (1) day or as long as ten (10) days.  Infection can occur in people of all ages but is most common in children.   The duration of an uncomplicated illness can range from one (1) to twelve (12) days.  In reported outbreaks, the rate of death is 0-2%, with rates running as high as 16-35% in outbreaks involving the elderly, like those that have occurred at nursing homes.

43.     What makes E. coli O157:H7 remarkably dangerous is its very low infectious dose, and how relatively difficult it is to kill these bacteria.  Unlike Salmonella, for example, which usually requires something approximating an egregious food handling error, E. coli O157:H7 in ground beef that is only slightly undercooked can result in infection, as few as twenty (20) organisms may be sufficient to infect a person and, as a result, possibly kill them. And unlike generic E. coli, the O157:H7 serotype multiplies at temperatures up to 44°F, survives freezing and thawing, is heat resistant, grows at temperatures up to 111°F, resists drying, and can survive exposure to acidic environments.

44.     And, finally, to make it even more of a threat, E. coli O157:H7 bacteria are easily transmitted by person-to-person contact.  There is also the serious risk of cross-contamination between raw meat and other food items intended to be eaten without cooking.  Indeed, a principle and consistent criticism of the USDA E. coli O157:H7 policy is the fact that it has failed to focus on the risks of cross-contamination versus that posed by so-called improper cooking.  With this pathogen, there is ultimately no margin of error.  It is for this precise reason that the USDA has repeatedly rejected calls from the meat industry to hold consumers primarily responsible for E. coli O157:H7 infections caused, in part, by mistakes in food handling or cooking.

**Hemolytic Uremic Syndrome (HUS)**

45.     E. coli O157:H7 infections can lead to a severe, life-threatening complication called hemolytic uremic syndrome (HUS).  HUS accounts for the majority of the acute and chronic illness and death caused by the bacteria.  HUS occurs in 2-7% of victims, primarily children, with onset five to ten days after diarrhea begins.  It is the most common cause of renal failure in children.  Approximately half of the children who suffer HUS require dialysis, and at least 5% of those who survive have long-term renal impairment.  The same number suffers severe brain damage.  While somewhat rare, serious injury to the pancreas, resulting in death or the development of diabetes, can also occur.  There is no cure or effective treatment for HUS.  And, tragically, as too many parents can attest, children with HUS too often die.

46.     HUS is believed to develop when the toxin from the bacteria, known as Shiga-like toxin (SLT), enters the circulation through the inflamed bowel wall.  SLT, and most likely other chemical mediators, attach to receptors on the inside surface of blood vessel cells (endothelial cells) and initiate a chemical cascade that results in the formation of tiny thrombi (blood clots)

within these vessels.  Some organs seem more susceptible, perhaps due to the presence of increased numbers of receptors, and include the kidney, pancreas, and brain.  By definition, when fully expressed, HUS presents with the triad of hemolytic anemia (destruction of red blood cells), thrombocytopenia (low platelet count), and renal failure (loss of kidney function).

47.     There is no known therapy to halt the progression of HUS.  HUS is a frightening complication that, even in the best American medical centers, has a notable mortality rate. Among survivors, at least five percent will suffer end stage renal disease (ESRD) with the resultant need for dialysis or transplantation.  Other long-term problems include the risk for hypertension, proteinuria (abnormal amounts of protein in the urine that can portend a decline in renal function), and reduced kidney filtration rate.  HUS causes permanent injury and requires a lifetime of close medical monitoring.

**The Plaintiff's E. coli O157:H7 Infection and HUS illness**

48.     At all relevant times, Plaintiff regularly consumed the I.M. Healthy brand of soy nut butter.

49.     Plaintiff's mother purchased I.M. Healthy soy nut butter from the Target Store on September 19, 2016, October 17, 2016, and November 21, 2016.

50.     During the December 11-16, 2016, time period, Plaintiff consumed I.M. Healthy soy nut butter with a "Best By" date 08-30-18 every day for lunch, and sometimes also for dinner.

51.     The I.M. Healthy brand of soy nut butter with a "Best By" date of 08-30-18 that Plaintiff consumed was purchased from the Target Store in Fairfax, Virginia.

52.     The I.M. Healthy brand of soy nut butter with a "Best By" date of 08-30-18 that

Plaintiff consumed was contaminated by E. coli O157:H7.

53.     Plaintiff's consumption of the E. coli-contaminated soy nut butter caused her to

become seriously ill.  Onset of Plaintiff's symptoms from her E. coli O157:H7 infection occurred

on or about December 15, 2016.

54.     Plaintiff initially sought treatment with her pediatrician, but in the early morning

hours of December 18, 2016, was taken to the emergency department at Fairfax Women and

Children's Hospital.  She was hospitalized and diagnosed with HUS and other serious, life-

threatening conditions.

55.     Plaintiff was ultimately hospitalized for more than a month, during which time

she suffered serious medical complications relating to her HUS illness, including severe and

irreparable damage to her kidneys.  She continues to suffer the adverse health consequences of

her illness and is forecast to require a lifetime of medical treatment and therapies, including

kidney transplantation.

56.     The contaminated I.M. Healthy soy nut butter that Plaintiff consumed was

purchased from the Target Store.

57.     The contaminated I.M. Healthy soy nut butter that Plaintiff consumed was

distributed and supplied by Defendant KeHE.

58.     The contaminated I.M. Healthy soy nut butter that Plaintiff consumed was

distributed and supplied by Defendant World Finer Foods.

## COUNT ONE

### (Negligence)

59.      Plaintiff repeats and realleges the prior allegations as set forth herein.

60.      At all relevant times, Defendant Target was engaged in the business of selling or introducing into the stream of commerce food products intended for human consumption, including I.M. Healthy soy nut butter.

61.      At all relevant times, Defendant KeHE was engaged in the business of distributing, supplying and introducing into the stream of commerce food products intended for human consumption, including I.M. Healthy soy nut butter.

62.      At all relevant times, Defendant World Finer Foods was engaged in the business of distributing, supplying and introducing into the stream of commerce food products intended for human consumption, including I.M. Healthy soy nut butter.

63.      Plaintiff's injury was the direct and proximate result of the negligence of the defendants Target, KeHE and World Finer Foods (hereinafter "Defendants") in selling, distributing, supplying, and introducing into the stream of commerce, the contaminated I.M. Healthy soy nut butter.

64.      Defendants owed a duty to the Plaintiff to use supplies and raw materials that complied with federal, state, and local food laws, ordinances, and regulations; that were safe and reliable sources; that were clean, wholesome, and free from adulteration; and that were safe for human consumption and for their intended purposes.

65.      Defendants breached the duties identified in the paragraph immediately above.

66.      Defendants owed a duty to the Plaintiff to use reasonable care in the selection,

supervision, and monitoring of their employees, suppliers, or other subcontractors.

67.     Defendants breached the duties identified in the paragraph immediately above.

68.     As a direct and proximate result of Defendants' negligence as set forth herein, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

## COUNT TWO

### (Failure to Warn)

69.     Plaintiff repeats and realleges the prior allegations as set forth herein.

70.     At all relevant times, Defendants had actual and constructive knowledge that the I.M. Healthy soy nut butter was contaminated and that consuming the soy nut butter would be extremely dangerous to consumers.

71.     At all relevant times, Defendants knew or had reason to know that the presence of E. coli O157:H7 bacteria in the I.M. Healthy soy nut butter was not obvious to or readily discoverable by Plaintiff.

72.     At all relevant times, Defendants had a duty to warn Plaintiff that the I.M. Healthy soy nut butter was contaminated with E. coli O157:H7.

73.     Defendants did not warn Plaintiff that the I.M. Healthy soy nut butter was contaminated with E. coli O157:H7.

74.     The I.M. Healthy soy nut butter that Defendants sold, distributed and supplied was unmerchantable as to Plaintiff.

75.     As a direct and proximate result of Defendants' failure to warn Plaintiff as described herein, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

## COUNT THREE

### (Breach of Express Warranty)

76.     Plaintiff repeats and realleges the prior allegations as set forth herein.

77.     The label of I.M. Healthy soy nut butter promises that consumers will be "Healthy" if they purchase and consume the soy nut butter.

78.     By assuring Plaintiff and her parents that the I.M. Healthy soy nut butter was healthy and that it was a "natural product," Defendants expressly warranted that the food that they sold, distributed and supplied was fit for Plaintiff's consumption.

79.     Defendants breached their express warranty as described above in that the food that they sold, distributed and supplied was not fit for Plaintiff's consumption.

80.     As a direct and proximate result of the breach of express warranty by Defendants, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

## COUNT FOUR

### (Implied Warranty of Fitness and Wholesomeness)

81.     Plaintiff repeats and realleges the prior allegations as set forth herein.

82.     Under Virginia Code § 8.2-315, where a seller at the time of contracting has reason

to know any particular purpose for which the goods are required and that the buyer is relying on the

seller's skill or judgment to furnish suitable goods, there is an implied warranty that the goods shall

be fit for such purpose.

83.    At the time of sale, a merchant of food for human consumption impliedly warrants

that the food is wholesome.

84.    Defendants were merchants of food products.

85.    The I.M. Healthy soy nut butter that Defendants sold, distributed and supplied was

not wholesome or fit for Plaintiff's consumption because it was contaminated by E. coli O157:H7.

86.    In selling, distributing and supplying the contaminated I.M. Healthy soy nut butter,

Defendants breached the implied warranties as described above.

87.    As a direct and proximate result of the breach of implied warranties by Defendants,

Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental distress, has

suffered and will suffer in the future pain of body and mind, has incurred medical and related

expenses, and has suffered and will suffer in the future other damages.

## COUNT FIVE

### (Implied Warranty of Merchantability)

88.    Plaintiff repeats and realleges the prior allegations as set forth herein.

89.    Under Virginia Code § 8.2-314, a merchant that sells goods impliedly warrants that

the goods are merchantable; *i.e.*, that the goods will pass without objection in the trade under the

contract description; that the goods are fit for the ordinary purposes for which such goods are used;

and, that the goods are adequately contained, packaged, and labeled as the agreement requires.

18

90.     The I.M. Healthy soy nut butter that Defendants sold, distributed and supplied was objectionable because it contained E. coli O157:H7.

91.     In selling, distributing and supplying the contaminated I.M. Healthy soy nut butter, Defendants breached the implied warranties as described above.

92.     As a direct and proximate result of the breach of implied warranties by Defendants, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

## COUNT SIX

### (Virginia Consumer Protection Act)

93.     Plaintiff repeats and realleges the prior allegations as set forth herein.

94.     At all relevant times, Defendants were suppliers of goods within the meaning of the Virginia Consumer Protection Act, Virginia Code § 59.1-196, et seq.

95.     At all relevant times, Defendants were engaged in a consumer transaction with Plaintiff and her parents.

96.     The Virginia Consumer Protection Act prohibits a supplier that is engaged in a consumer transaction from misrepresenting that its goods and services have certain characteristics, ingredients, uses, or benefits; mispresenting that its goods and services are of a particular standard or quality; and, using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

97.     Defendants' actions as described herein were prohibited practices under Virginia Code § 59.1-200 and violated the Virginia Consumer Protection Act.

98.     Virginia Code § 59.1-204 permits consumers who are injured by a defendant supplier's willful violation of the Virginia Consumer Protection Act to recover actual damages, treble damages if the defendant's violation was willful, attorneys' fees, and, court costs.

99.     As a direct and proximate result of Defendants' violations of the Virginia Consumer Protection Act, Plaintiff was caused to suffer serious injuries, has suffered bodily pain and mental anguish, has suffered and will suffer in the future pain of body and mind, has incurred medical and related expenses, and has suffered and will suffer in the future other damages.

WHEREFORE, the plaintiff JAMIE HUNSTAD demands judgment against the defendants TARGET CORPORATION A/K/A TARGET STORES, INC., KEHE DISTRIBUTORS, LLC, KEHE DISTRIBUTORS, INC., KEHE ENTERPRISES, LLC, WORLD FINER FOODS, INC., and WORLD FINER FOODS, LLC, in the sum of SEVENTY-FIVE MILLION DOLLARS ($75,000,000.00), jointly and severally, for compensatory damages, plus pre-judgment and post-judgment interest and costs.

TRIAL BY JURY IS DEMANDED.

JAMIE HUNSTAD

By Counsel:

/s/ Jason W. Konvicka
Jason W. Konvicka, Esquire (VSB No. 37418)
Ashley T. Davis, Esquire (VSB No. 68078)
ALLEN, ALLEN, ALLEN & ALLEN
1809 Staples Mill Road
Post Office Box 6855
Richmond, Virginia 23230
Phone: (804) 257-7528
Facsimile: (804) 257-7589
Jason.Konvicka@AllenandAllen.com
Ashley.Davis@AllenandAllen.com

20

and

William D. Marler, Esquire
(to be admitted *pro hac vice*)
MARLER CLARK, LLP
1012 1ST Ave., Fifth Floor
Seattle, Washington 98104
Phone: (206) 346-1888
Facsimile: (206) 346-1898
bmarler@marlerclark.com